The next matter, number 24-1642, Power Rental OP CO, LLC v. Virgin Islands Water and Power Authority. At this time, would counsel for the appellant please introduce himself on the record to begin. Counsel is reminded to please speak up into the microphone. Good morning, your honors. Carlos A. Garcia Perez on behalf of the appellant, VI WAPA. Your honor, I would like to reserve three minutes for rebuttal, please. You may. Thank you. How many was that? Three? Three. Thank you. Your honor, this case stems out of a litigation that took place in the middle district of Florida where the parties reached a settlement agreement and that settlement agreement contained two clauses that are very relevant to this case, to this matter, which is one, it contained the immunities afforded by the Virgin Islands Statute, and second, that the New York law was the controlling law. Subsequent to that settlement, the appellee managed to get a judgment against... But when you say New York is a controlling law, it's controlling law as to the substance of the agreement, not as to procedural matters, correct? Correct, your honor. And it specifically says about substance. So subsequent to that, they get a judgment and they tried to enforce the judgment in Florida, raising basically the same issues that we're facing today. And let me ask you, that judgment was appealed, the appeal was withdrawn, so why isn't that a final judgment or why can it be challenged now? Your honor, the part of the judgment that was appealed was the waiver issue and it was withdrawn and accepted by the court of appeals. The other... But it's a final judgment regardless, even if it had not been appealed, it's a final judgment. It's a final judgment. In terms of the waiver, yes, your honor. I mean, but it's a judgment that was appealed and was withdrawn. The other part, the part of the garnishment, the part where the separate entity rule was applied, the court ruled against... They did not allow the garnishment. Subsequent to that, they filed the case in Puerto Rico, your honor. And I'd like to address the court's decision regarding the garnishment. The relevant part of the separate entity rule is not where the funds are located, but it's where the banking took place. So I think the predicate issue here is, is Puerto Rico law applicable to deciding whether the separate entity rule applies? And if so, isn't it clear that Puerto Rico does not apply the separate entity rule? Puerto Rico has not decided, your honor, whether the separate entity rule applies or not. Well, start with step one. Do you agree we... I'm sorry? Start with step one. On this issue of execution on the judgment that's filed for execution in Puerto Rico, don't we look at Puerto Rico procedural law? You do, your honor, taking into consideration... The court found Puerto Rico law and execution does not recognize the separate entity rule. And so you need to convince us that the Puerto Rican court, or the district court in Puerto Rico was wrong in that conclusion. Understood. And it doesn't help to look at New York law or law elsewhere to answer that question. To answer your question, your honor, the only reason I'm mentioning the New York law is because the procedures of Puerto Rican law of garnishing the funds for V.I. Uaba does have a effect, a substantive effect, that it goes against the laws of division islands. That's one response. And the other answer, your honor, is that the district court based its reasoning on the Marisco case. And the Marisco case is distinguishable from this case because number one, it was an arbitration that was... The American Samoan agreed to submit itself to an arbitration. That arbitration was... There's no statute that prohibits, like in this case, the levy of funds of a public authority. And... Don't you need to convince us that either the separate entity rule is not a rule of execution procedure, but is a rule of substantive law, or you need to convince us that the district court, in this case, misread Puerto Rican execution law? I think the separate entity rule is a matter... It's a substantive law, your honor, because it talks about whether the court's going to have jurisdiction over a particular entity to execute funds. And that's what the Motorola case talks about. Okay, but you're asking... You asked the district court, now you're asking us to apply the separate entity rule, correct? What I'm asking... Yes, your honor. What I'm saying is that we believe that the Puerto Rico court, the district court, respectfully, your honor, error in not applying the separate entity rule because even though we have to apply the... Okay, but if there's nothing in Puerto Rico, no statute creating that separate entity rule, and the Puerto Rico Supreme Court has never even... There's no decisions, or it has not even hinted, and I don't think there's any... It's not stare decisis, but there's no court appeals, local court appeals, or superior court cases that... This has never even been raised in Puerto Rico. So what would make you think that Puerto Rico Supreme Court would apply the rule? Well, your honor, I'm not trying to predict what the Supreme Court would do because it would be a very difficult exercise. I don't know where that would go. What we know is what it has never done. Right, but what I'm focusing is on the district court decision that decided not to do it, that basis decision on the Marisco case, and also respectfully submitting to this court that the separate entity rule has an effect, or not applying the separate entity rule has an effect in violating laws of the Virgin Islands if it's executed pursuant to the district court's decision. That's my point. Okay. Well, you're saying it violates the immunity laws. I am saying it would violate the immunities... It would violate the immunities laws. You lost that issue in Florida. Excuse me, your honor. I'm sorry. You lost that issue in Florida. Well, I lost that issue in Florida, your honor, and... That's binding. You didn't get it overturned on appeal, so it's law of the case for purposes of an execution proceeding. Well, I'm glad you're bringing up that point, your honor. The law of the case, I realize it's an uphill climb to overturn the decision of the district court in Florida. We don't have jurisdiction to overturn it. That's a separate circuit. I understand that, but the district court ruled on it and talked about it, and it's ruling on it, your honor. So respectfully, it is before us understanding that is a steep hill to climb and to overturn that. It has to be manifest injustice. It's a tough task. But nonetheless, I present to you respectfully that if we follow the law of the case, then the law of the case is a separate entity rule applies, and the Puerto Rico district court is not applying it. The Puerto Rico district court... So the only thing that would save your client at this juncture would be applying the separate entity rule, correct? Your honor, that's... Yes. Well, the other one would save it too, your honor, but I'm admitting that is a tough task, right? And the other thing that I want to bring up to the court is they have a perfectly good federal court system in the Virgin Islands to... But if they go to the Virgin Islands, then the Virgin Islands would apply the separate entity rule. But it wouldn't because the branch... You mean if they go there, they would have to... They can garnish it there, your honor. That's the branch. That's the branch where my client did the banking. That's the branch where all the other clients of the Virgin Islands pay their money. My clients have never been to Puerto Rico to bank. That's our point, your honor. Did you just say that the separate entity rule is law of the case? No, no. I'm saying... Well, I'm saying that... I don't understand what you mean by that. Thank you for the question. Thank you for the question. So the court in the Middle East of Florida denied their garnishment in Florida. They said, I can't do this here, and they applied the separate entity rule. Because of Florida law, in other words, they ruled that Florida recognizes the separate entity rule. Correct. That was for the earlier case in Florida. Correct. Not the summary judgment. No. That's not what... No, no. We're at the execution at the... I need to take some water. I'm sorry. I apologize. There you are. I'm sorry. So you're conflating these two things that happened in Florida. The first one was the garnishment issue, but the second one, the one that I think Judge referring to as law of the case, that's the decision on the summary judgment. That's the one that's enforcing the... The one that says waiver does not apply. That's law of the case here, right? Correct. But I want to propose the following. If at the execution stage, after the judgment, they're trying to garnish funds in Florida, and Florida, the court in Florida applies the separate entity rule based on Florida, but that's what they do, right? We propose that to be consistent, the district court in Puerto Rico should have done the same. The same would be, in other words, if the Florida court ruled that under Florida law, the separate entity rule applies, then your point, you'd be able to make the point that in the district court of Puerto Rico, that court would have to treat as law of the case, the finding that Florida law recognizes the separate entity rule. But that's not the issue in the Puerto Rican district court. The issue is, does Puerto Rico law apply the separate entity rule? And there is no prior law of the case on that issue. Isn't that how we should analyze it? Well, not in Puerto Rico, Your Honor, but to be consistent, and I take your point, to be consistent in this case, if Florida said no, because of the separate entity rule, right? And there's a ruling on that, and there's a finding of facts on that, and then it comes to Puerto Rico, and granted, Puerto Rico has not recognized that. We don't know what the Supreme Court's going to do to have some consistency. We propose respectfully that the law of the case should also apply to the fact that the separate entity rule has been previously applied to this case. Could I ask you one more question? This is all about jurisdiction, right? Correct. Okay. So, do we even have to get to this separate entity rule question, because I understand the law, doesn't the court have jurisdiction over First Bank, in personam jurisdiction over First Bank, because First Bank is actually headquartered in Puerto Rico? They have jurisdiction over First Bank, but precisely the separate entity rule, Your Honor, what dictates is that the jurisdiction to be able to execute a judgment has to be in the bank where the banking took place. There's an exception to the separate entity rule, which is if the bank where VI did all their banking, I'm sorry I'm being redundant on that, was where the headquarters is, i.e. Puerto Rico, the separate entity rule would not apply. Okay, thank you. You have three minutes to rebuttal. Thank you. Thank you, counsel. Please remember to speak up into the microphone. Good morning, Your Honors. May I please record? Good morning. Good morning, as well, over there. As you can see from Appellant's argument, they in essence have two arguments, whether WAPA is protected from post-judgment execution under USBI law, and whether WAPA's bank account and funds were located in Puerto Rico and subject to the separate entity rule. Let me ask you, why didn't your client simply seek execution in the U.S. Virgin Islands? The district court there is just as competent as any other district court in the nation. Honestly, I don't know the answer to that. When I got a call, they asked me to register the judgment in Puerto Rico, and I did. Assuming, when I started looking at the case, there was a prior holding by the Florida courts stating that there were payments made from bank accounts in Puerto Rico and funds in Puerto Rico for an amount for around $5 million. So, I figured that they had monies in Puerto Rico to be attached, so that's why I did it. The first argument, which is whether they're protected under the statutory exemption of post-judgment attachments, the answer is no, because they waived it through a promissory note. As this court mentioned, that holding is subject to a final judgment or order that was appealed to the 11th Circuit and then voluntarily dismissed. We don't think there is a reason to rehear that argument on the merits. This court has seldom, at least versus USA, that where the court, the prior court committed a blatant error in its prior decision that will resort in a serious injustice. That's when you can come in and reassess a situation. I don't think either of those requirements are met here. There's no blatant error. There's no case law that says that a power authority like this cannot waive its immunity from post-judgment attachment. And there's also no injustice if the waiver order is upheld. Actually, I think it's the other way around. It would be an injustice for my client not to have this judgment paid off. WAPA has had now three and a half years to pay off the debt or at least make partial payments to the debt, and they haven't been able to do so. That's why they contacted at least my services to do this attachment in Puerto Rico. Now going to the separate entity rule arguments, there are two arguments within the arguments that Applin has made. The first one is that the funds were located in Puerto Rico, and the only evidence for that is a single-page opening account document, which has a First Bank Virgin Islands letterhead, and the fact that obviously WAPA conducts most of its business and uses the First Bank branch in USVI. Apart from that, there's no other evidence to support that the funds were, in fact, in the Virgin Islands. Actually, the only evidence which I alluded to is the one that they had bank accounts and monies both in Banco Popular and First Bank in Puerto Rico where the $5 million payments were made. There's case law cited in Applin's brief. You're saying that even under the separate entity rule, the entity where they had their funds was Puerto Rico, was their branch in Puerto Rico? Yes. My argument is... So why would we even have this case? Well, the separate entity rule, I'm assuming... Let me backtrack. The funds that we attached in Puerto Rico, I assume they're in Puerto Rico. There's no evidence that they were in the USVI. I've never seen the bank account nor a bank statement from where the funds came from. I really don't know if they were in a Puerto Rican bank account or a USVI branch bank account. I have no idea. There's no evidence before this court to support that. Actually, they should know because they got the funds attached. What you're saying is that if we should find that the separate entity rule applies, we would not reverse. We would simply vacate for the lower court to then determine where the money was? No, because I'm saying even if the separate entity rule applied, the garnishment would still be valid. Only if it's in Puerto Rico, the cash. Excuse me? Only if the money is in Puerto Rico. No, even if the separate entity rule applied to this particular case, I think we would still be able to garnish these funds under the separate entity rule. That's an argument we made in the brief and I'll explain why. There's a case called Kohler from 2008 and it's not specifically based on a separate entity rule, so I have to be clear on that. But it was a Ferg's kink on the armor, which is they allowed a branch of a foreign ... No. They garnished a securities stock certificate that was in a foreign bank and they were able to garnish it over the separate entity rule because the New York court concluded that they had in personam jurisdiction over that bank. In our case, not only does the Puerto Rico court have in personam jurisdiction over First Bank, but has general jurisdiction over First Bank because First Bank headquarters and main offices are in Puerto Rico. So because you can hear every single case against First Bank that you can imagine in Puerto Rico, you can go to First Bank and garnish monies that are deposited in First Bank in any branch of First Bank through First Bank in Puerto Rico. There is case law to support that from, I think it's DG Trex, it's a New York case law from 1980 to support that. If you perform a post judgment garnishment over the headquarters because you have general jurisdiction over the headquarters, you can still attach those funds no matter where the funds are. Of course, the separate entity rules right now, the separate entity rule, how it is right now is that it definitely applies to foreign branches, meaning that you cannot go to New York and try to attach funds that are in a foreign branch of that bank that is in New York. That's what the entity, the separate entity rule says right now. There are holdings by New York lower courts and other courts that say that that applies to domestic banks between states, but that's not the rule right now. So another argument that we have is the separate entity rule applies to foreign banking, but not domestic banking, particularly when you are attaching the funds through the headquarters in Puerto Rico. So back to sum up my argument with regards to the separate entity rule, my argument is the attachment was done on funds that were located in Puerto Rico, the attachment was done with prior evidence knowing that there were around $5 million payments made from accounts in Puerto Rico. That's a pretty unfashionable case that the funds were in Puerto Rico. It's the onus of WAPA to show that the funds were not in Puerto Rico and they did not provide evidence that the funds were actually in Puerto Rico. The best evidence was to show the account where the funds was freezed and show at least that the account is really a Virgin Islands branch account, but that hasn't happened in this case. So if I understand you, just to be clear on this, if we end up agreeing with you that because of both impersonal jurisdiction and general jurisdiction, because the headquarters of First Bank is located in Puerto Rico, if we agree with you on that, then is it true that we don't have to reach the question of whether the Puerto Rico Supreme Court would adopt the separate entity rule or not adopt the separate entity rule? We can avoid that question if jurisdiction is present. Is that right? I would agree with that, yes. Yes, because you have a general jurisdiction over the bank and because you can bring any suit that you can imagine against that bank. For example, let's say you were to liquidate that bank. You would do it in Puerto Rico, but that's where it is, and then you would need to gather all the assets from every other branch no matter where they are. So that's what's very different from this case, from the other case, even Marisco case, that the Garni Xi Bank is in Puerto Rico. We went to the main office. We didn't go to a branch somewhere else or a foreign country or in New York to attach somewhere in China or Philippines like many of the other cases. We went to the main bank. Let's assume that First Bank had a branch here, a small branch here in Massachusetts, and you'd gone to that branch to seize the funds. That would have been different from going to Puerto Rico. Correct. That's what I'm saying. You couldn't do it here in Massachusetts. That's what I'm saying. And that's what happened in Florida. What happened in Florida, by the way, was a pre-judgment attachment attempt. And Florida court said, you know, we are applying the separate entity rule. You cannot attach funds that are in Puerto Rico through Florida. And that's what they said there, funds in Puerto Rico through Florida. So we went to Puerto Rico and I attached them here. That's what we did. So I think that covers everything on my end. Any other questions? Okay. Thank you. Thank you. Thank you.     And Councilor Garcia, you have three minutes rebuttal. Please identify yourself. Thank you, Your Honor. Carlos Garcia Perez again for the appellant. Just want to clarify a couple of points. The location of the funds is completely irrelevant for the separate entity rule. They can go to the Virgin Islands. And to answer your question, Your Honor, if the facts took place in the bank, in the branch here in Boston, and the banking took place here in the bank in Boston, in the branch in Boston, and they came in with the rent, the funds would have to be seized. The locations of the funds are not relevant. Second, the Kohler case. The Kohler case, which is started by my brother, Counsel, and Motorola subsequent to that, is very clear that the Kohler case does not deal with the separate entity rule at all. And thirdly, I'm not here requesting a prediction of what the Supreme Court of Puerto Rico is going to do. The separate entity rule has to do with the jurisdiction of the bank where you're going to be able to attach the funds. What we're asking here is respectfully to be consistent with the prior ruling. They have a perfectly good remedy of doing the same thing, getting our garnishment in the Virgin Islands, and getting the funds where it's proper. That's my... Does it have to be a prediction of what the Supreme Court in Puerto Rico would do in order to answer the question? No, Your Honor. No. No. But I think it's been inferred, and especially in the lower courts, no. You don't have to predict. We don't have to predict anything, if I may clarify that. Okay. Then how do we decide whether it applies or not? Because I think you follow what happened in Florida, and we're consistent with that ruling. And that ruling, in no shape or form, hurts the appellee. Because they should go, and it's not... My brother Counselor was not known for a very long time. They've been forward shopping this. They started in Florida, now they're in Puerto Rico, and they need just to hop it over to the Virgin Islands. So that's our proposal, Your Honor. That's what we submit to you. Okay. Thank you. Thank you. Thank you, Counsel. That concludes argument in this case.